IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONAL CASUALTY COMPANY | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO.  07-cv-4836 |
| CHRISTOPHER YOUNG | : | |
| | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM OPINION**

GOLDEN, J.                                                           JULY 14, 2009

        Before the Court is Plaintiff National Casualty Company's Motion for Summary

Judgment.  The sole question presented in Plaintiff's Motion is whether, under the insurance

policy issued by Plaintiff to the insured Plainfield Township, Plaintiff owes a duty to defend

Defendant Christopher Young for the claims asserted against Defendant in a prior lawsuit

brought by Karen Romano individually and on behalf of minor Sierra Cardwell.  (Civil Action

No. 07-1708; hereinafter referred to as the "Underlying Action").  In the Underlying Action,

Romano alleged, among other things, that Defendant—then a police officer for the insured

Plainfield Township—engaged in sexual contact with Cardwell in violation of Cardwell's

constitutional rights actionable under 42 U.S.C. § 1983 and subsequently lied to his supervisor

when questioned about this sexual relationship.  For the following reasons, Plaintiff's Motion for

Summary Judgment is granted and the Court concludes that Plaintiff has no duty to defend

Defendant in the Underlying Action.[1]

_____

        [1] Plaintiff is also seeking a declaration from the Court that it does not owe a duty to indemnify Defendant in
the Underlying Action.  As explained below, the Court held in the Underlying Action, see Romano v. Young, No.
07-1708, 2009 WL 839017, at *7-8 (E.D. Pa. Mar. 30, 2009), that Defendant was not liable as a state actor under

## FACTUAL BACKGROUND

### I.      Background of Underlying Action

Defendant Christopher Young was a police officer for Plainfield Township from December 2001 through 2005.  (Joint Stipulation of Facts ¶ 11).  In April 2007, a lawsuit was filed by Karen Romano ("Romano") in her individual capacity and as a parent of minor Sierra Cardwell ("Cardwell") against Defendant and others at Civil Action No. 07-1708.  (Id. ¶ 1).  An Amended Complaint was filed on July 3, 2007.  (Id.).  The Amended Complaint alleged that Defendant engaged in sexual activity with Cardwell—who was fifteen years old and a neighbor of Defendant—at various times and locations commencing on or about June 2005 and continuing

Count I, which alleged violations of Cardwell's Fifth and Fourteenth Amendment rights, actionable through 42 U.S.C. § 1983, for invading Cardwell's bodily integrity.  The Court then declined to exercise supplemental jurisdiction over Romano's state law claims, thereby dismissing Counts VI, VII, VIII, and IX without prejudice.  Id. at *7-8.  Under Pennsylvania Law, "[a]n insurer is required to indemnify only where the insured is held liable for a claim actually covered by the policy."  USX Corp. v. Adriatic Ins. Co., 99 F. Supp. 2d 593, 611 (W.D. Pa. 2000) (citing Gen. Accident Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa.1997)), aff'd, 345 F.3d 190 (3d Cir. 2003), cert. denied, 541 U.S. 903 (2004).  As one court has stated, "[a]s a general rule, the declaratory judgment court should refrain from determining the insurer's duty to indemnify until the insured is found liable for damages in the underlying action."  See Home Ins. Co. v. Law Offices of Jonathan DeYoung, P.C., 107 F. Supp. 2d 647, 650 (E.D. Pa. 2000).  As a result, because the duty to indemnify does not arise until the insured is found liable for a covered claim—and the Court dismissed the Underlying Action against Defendant—the Court will not address indemnification and will only evaluate whether Plaintiff had (and still has) a duty to defend Defendant in the Underlying Action.  The Court, however, is aware that a finding that the duty to defend is not present will preclude a duty to indemnify.  See Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 896 n.7 (Pa. 2006).

Furthermore, the Declaratory Judgments Act provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201.  Granting or denying a declaratory judgment is discretionary.  State Auto Ins. Cos. v. Summy, 234 F.3d 131, 133 (3d Cir. 2000).  The Court must consider: "(1) the likelihood that the declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in a settlement of the uncertainty of obligation; and (4) the availability and relative convenience of other remedies."  Bituminous Coal Operators' Ass'n Inc. v. Int'l Union, United Mine Workers of Am., 585 F.2d 586, 596-97 (3d Cir. 1978), abrogated on other grounds by Carbon Fuel Co. v. United Mine Workers of Am., 444 U.S. 212 (1979).  Because a decision in this case would resolve the question of whether Plaintiff or Defendant is liable to pay for the defense imposed in the Underlying Action, the Court finds that a decision will resolve an underlying uncertainty, aid the parties in the Underlying Action, serve the public interest, and is the most convenient remedy to the uncertainty.  See Scottsdale Ins. Co. v. City of Easton, No. 07-3079, 2009 WL 673291, at *2 (E.D. Pa. Mar. 9, 2009).

for approximately four months.  (Id. ¶¶ 1-3, 12; Am. Compl. ¶¶ 1, 5, 14).  In March 2007, Defendant pled guilty to felony statutory sexual assault pursuant to 18 Pa. Cons. Stat. Ann. § 3122.1[2]—a fact pled in Romano's Amended Complaint.  (Joint Stipulation of Facts ¶¶ 4, 18-19; Am. Compl. ¶ 17).  Furthermore, the Amended Complaint claimed that Defendant falsely denied the allegations of improper sexual contact with Cardwell and, instead, defamed and maligned Romano by stating that he had sex with Romano and not with Cardwell.  (Joint Stipulation of Facts ¶ 5; Am. Compl. ¶¶ 28-29).  Defendant admitted at his deposition that, when he was first questioned by Plainfield Township Police Chief Dean Ceraul about Defendant's alleged sexual contact with Cardwell, he denied that it occurred and claimed instead that he was having an affair with Romano.  (Joint Stipulation of Facts ¶¶ 16-17).  The Amended Complaint further alleged that "[a]t all relevant times [Defendant] was employed as a police officer acting under color of law, with the Plainfield Township Police Department."  (Am. Compl. ¶ 6).

Based on these facts, Romano individually and on behalf of Cardwell asserted several causes of action against Defendant in the Underlying Action, including: (1) violations of Cardwell's Fifth and Fourteenth Amendment rights, actionable through 42 U.S.C. § 1983, for invading Cardwell's constitutional right to bodily integrity (Count I); (2) intentional infliction of emotional distress on Cardwell (Count VI); (3) assault and battery of Cardwell (Count VII); (4) defamation of Romano (Count VIII); and (5) false light/invasion of privacy of Romano (Count IX).  (Joint Stipulation of Facts ¶¶ 6-10).  After reviewing several motions for summary judgment and hearing oral argument, the Court entered judgment in favor of Young as to the

_____

[2] Under 18 Pa. Cons. Stat. Ann. § 3122.1, "a person commits a felony of the second degree when that person engages in sexual intercourse with a complainant under the age of 16 years and that person is four or more years older than the complainant and the complainant and the person are not married to each other."

Section 1983 claim in Count I, holding that "there simply is no evidence from which a jury could conclude that Young was either acting or purporting to act in his official capacity on any of the occasions when he had sexual relations with Cardwell."  See Romano v. Young, No. 07-1708, 2009 WL 839017, at *7 (E.D. Pa. Mar. 30, 2009).  Because judgment was entered in the Section 1983 federal claim, the Court declined to exercise supplemental jurisdiction over Romano's state law claims and dismissed without prejudice Counts VI, VII, VIII, and IX.  The Court's decision was appealed by Romano to the Third Circuit Court of Appeals.  (Doc. No. 100).

## II.      The Insurance Policy

The operative insurance policy in this case (hereinafter, the "Policy") specifically provides coverage for losses "resulting from 'law enforcement wrongful act(s)' which arise out of and are committed during the course and scope of 'law enforcement activities.'"  (Policy, Sec. I.1, NCC00064).  An insured individual under the Policy is any "full or part-time employee[] [of Plainfield Township] and all persons who were, now are, or will be [Plainfield Township's] lawfully elected, appointed or employed officials with respect to liability arising out of 'law enforcement activities.'"  (Policy, Sec. III.2, NCC00066).  Plaintiff has the "duty to defend any 'suit' against the [Defendant] insured even if any of the allegations of the 'suit' are groundless, false or fraudulent."  (Policy, Sec. I.2, NCC00064).

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted if the record, including pleadings, depositions, affidavits, and answers to interrogatories, demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In making that determination, the "evidence of the non-movant is to be believed, and

-4-

all justifiable inferences are to be drawn in his favor." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 255 (1986).  The question is whether "the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter

of law." <u>Id.</u> at 251-52.  It is not the role of the trial judge "to weigh the evidence and determine

the truth of the matter, but to determine whether there is a genuine issue for trial." <u>Id.</u> at 250.

Indeed, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions, not those of a judge." <u>Id.</u> at 255.

## INTERPRETATION OF INSURANCE CONTRACTS

"[A] duty to defend is broader than the duty to indemnify." <u>Kvaerner Metals Div. of

Kvaerner U.S., Inc. v. Commercial Union Ins. Co.</u>, 908 A.2d 888, 896 n.7 (Pa. 2006).

Accordingly, an insurer may have a duty to defend even though it may ultimately have no duty to

indemnify. <u>Frog, Switch & Mfg. Co. v. Travelers Ins. Co.</u>, 193 F.3d 742, 746 (3d Cir. 1999).

"[A] insurer must defend its insured if the underlying complaint alleges facts which, if true,

would actually or *potentially* bring the claims within the policy coverage." <u>Belser v. Rockwood

Cas. Ins. Co.</u>, 791 A.2d 1216, 1222 (Pa. Super. Ct. 2002) (quoting <u>Bd. of Public Educ. of Sch.

Dist. of Pittsburgh v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.</u>, 709 A.2d 910, 913 (Pa. Super

Ct. 1998)) (emphasis added).  If there is no possibility that any of the underlying claims could fall

within the coverage of the policy, then the insurer has no duty to defend or indemnify. <u>Sphere

Drake, P.L.C. v. 101 Variety, Inc.</u>, 35 F. Supp. 2d 421, 428 (E.D. Pa. 1999).  When an insurer's

defense obligation is triggered under the policy, the insurer must provide a defense "even if such

suit is groundless, false, or fraudulent." <u>Britamco Underwriters, Inc. v. Weiner</u>, 636 A.2d 649,

651 (Pa. Super. Ct. 1994), <u>appeal denied</u>, 655 A.2d 508 (Pa. 1994).  "[I]f a single claim in a

-5-

multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim." Frog, Switch, 193 F.3d at 746.

"Under Pennsylvania law, which the parties agree is applicable here, the 'interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the Court.'" Nationwide Mut. Ins. Co. v. CPB Int'l, Inc., 562 F.3d 591, 595 (3d Cir. 2009) (quoting Gardner v. State Farm Fire & Cas. Co., 544 F.3d 533, 558 (3d Cir. 2008)). In its analysis, a court first looks to the terms of the policy "which are a manifestation of the intent of the parties." Id. (internal quotations omitted). "When the language of the policy is clear and unambiguous, [the court] must give effect to that language." Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007). In cases where the wording is ambiguous, relevant extrinsic evidence should be considered to resolve the ambiguity. See Bokunewicz v. Purolator Prods., Inc., 907 F.2d 1396, 1401 (3d Cir. 1990) (citing Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 390 (Pa. 1986)); see also 12th Street Gym, Inc. v. Gen. Star Indem. Co., 980 F. Supp. 796, 801-02 (E.D. Pa. 1997). When such evidence does not resolve the dispute, the policy provision is to be construed in favor of the insured and against the insurer as the drafter of the agreement. See Bateman v. Motorists Mutual Ins. Co., 590 A.2d 281, 283 (Pa. 1991). Contractual language is ambiguous if "it is reasonably susceptible of different constructions and capable of being understood in more than one sense." Hutchison, 519 A.2d at 390.

Next, a court compares the terms of the policy to the allegations in the underlying claim. Nationwide, 562 F.3d at 595. "It is well established that an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured." Id. (quoting Kvaerner,

908 A.2d at 897).  "In determining the existence of a duty to defend, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured."  Id. at 595-96 (quoting Frog, Switch, 193 F.3d at 746).  Thus, in assessing whether a duty to defend exists in this case, the Court will look to the language of the Policy to determine in which instances the Policy provides coverage, and then will examine Romano's Amended Complaint to determine whether the allegations set forth therein constitute the type of instances that trigger coverage.  See id. at 596 (citing Kvaerner, 908 A.2d at 897).

**ANALYSIS**

**I.     Coverage for "Law Enforcement Wrongful Acts": Counts VIII (defamation of Romano) and IX (false light/invasion of privacy of Romano)**

Defendant argues that Plaintiff has a duty to defend him against Counts VIII (defamation of Romano) and IX (false light/invasion of privacy of Romano) because the allegations forming the basis of these counts arise out of Defendant's "law enforcement activities."  Here, the burden is on Defendant insured to establish coverage under this provision.  See Essex Ins. Co. v. Quick Stop Mart, Inc., No. 07-1909, 2009 WL 700879, at *5 (E.D. Pa. Mar. 13, 2009) (citing Erie Ins. Exchange v. Transamerica Ins. Co., 533 A.2d 1363, 1366-67 (Pa. 1987)).

Again, the Policy specifically provides coverage for losses resulting from "law enforcement wrongful acts" that arise out of and are committed during the course and scope of "law enforcement activities."  (See Policy, Sec. I.1, NCC00064).  A "law enforcement wrongful act" is defined as "any actual or alleged act, error or omission, neglect or breach of duty by the insured while conducting 'law enforcement activities' which results in (a) 'personal injury'; (b) 'bodily injury'; or (c) 'property damage' . . . caused by an 'occurrence.'"  (Policy, Sec. VI.5,

NCC00068).  Under the Policy, the term "law enforcement activities" means: (a) "[t]hose

activities conducted by [Plainfield Township's] Law Enforcement Department or Agency shown

in the Law Enforcement Liability Coverage Part Supplemental Declarations; and (b)

Departmentally approved activities which are declared in the application for this insurance."

(Policy, Sec. VI.4, NCC00068).  The Law Enforcement Liability Coverage Part Supplemental

Declarations include such Law Enforcement Department activities as the operation of a detention

cell and the usage of various procedures when hiring police officers.  (Policy Ex. 2).

        When determining an insurance company's obligation to indemnify or defend the insured,

courts have interpreted the phrase "law enforcement activities" as broadly encompassing

impropriety or negligence by law enforcement officers *in the course of their duties*.  See

Scottsdale Ins. Co. v. City of Easton, No. 07-3079, 2009 WL 673291, at *1, 3 (E.D. Pa. Mar. 9,

2009) (police officer's accidental shooting and killing of another police officer during SWAT

team weapons training sufficiently alleged loss arising from "ownership, maintenance or use of

premises . . . for the purpose of conducting law enforcement activities" because the incident

occurred during a sanctioned law enforcement activity); see also Clarendon v. Nat'l Ins. Co. v.

City of York, 121 F. App'x 940, 943-44 (3d Cir. 2005) (allegations that five York police officers

encouraged white groups to engage in racial violence against African Americans and then, when

violence erupted, neither controlled the crime scene nor arrested anyone arose out of operational

law enforcement functions and activities because the officers "exploited their law enforcement

status"); Borough of Kennett Square v. First Mercury Syndicate, Inc., No. 98-168, 1998 WL

401603, at *2, 8 (E.D. Pa. July 9, 1998) (allegations by former police officer plaintiffs that they

were constantly threatened with termination and retaliated against by their police chief due to

their activities with a police officers' association arose out of the activities of a law enforcement agency). This notion is reflected in the Policy itself, which only provides coverage if the law enforcement wrongful act *both* arises out of *and* is committed during the course and scope of a "law enforcement activity." (Policy, Sec. I.1, NCC00064).

Unlike <u>Scottsdale</u>, <u>Clarendon</u>, and <u>Borough of Kennett Square</u>, while Defendant's alleged statements to Police Chief Dean Ceraul denying his sexual relationship with Cardwell were improper (<u>see</u> Joint Stipulation of Facts ¶¶ 5, 16-17; Am. Compl. ¶¶ 28-29), they were not made *in the course of Defendant's law enforcement duties*. Rather, according to the Amended Complaint, these statements appeared to have been made "[d]uring the course of [an] investigation" of Defendant's conduct by Police Chief Dean Ceraul. (Am. Compl. ¶ 27). To this extent, Defendant's statements were the responses of a person accused of potentially criminal acts, which has little, if any, nexus to Defendant's law enforcement responsibilities. Defendant made these statements in an attempt to avoid the consequences of his sexual relationship with minor Cardwell. Contrary to Defendant's position (<u>see</u> Def.'s Br. at 10), Defendant's fortuitous wearing of his uniform and presence in the Plainfield Township Police Department building at the time these statements were made do not create a nexus between these statements and "law enforcement activities" sufficient to provide coverage, as Defendant was acting as any other person accused of committing a crime. As a result, Defendant has not met his burden of establishing potential coverage for Counts VIII and IX asserted by Romano, as the alleged facts in these counts do not arise out of and were not committed during the course and scope of "law enforcement activities." <u>See</u> <u>Imperial Cas. & Indem. Co. v. Home Ins. Co. of Manchester, N.H.</u>, 727 F. Supp. 917, 919 (M.D. Pa. 1990) (allegation of wrongful death of inmate while inmate was

incarcerated in county prison did not arise out of law enforcement activities because operation of a jail cell is incidental to law enforcement activities and the exclusion at issue did not preclude coverage for incidental operations), aff'd, 909 F.2d 1476 (3d Cir. 1990).[3]

## II.    Exclusion Provisions: Counts I (42 U.S.C. § 1983 violation of Cardwell's bodily integrity), VI (intentional infliction of emotional distress on Cardwell), and VII (assault and battery of Cardwell)

Plaintiff relies on the following two exclusion provisions in the Policy as a basis for claiming that it does not owe a duty to defend Defendant for the claims in the Amended Complaint asserted by Romano on behalf of Cardwell arising out of Defendant's alleged sexual conduct: (a) the "Sexual Abuse or Molestation" exclusion and (b) the "Violation of Statute" exclusion.  Here, as Plaintiff insurer is relying on policy exclusions as the basis for denying coverage, Plaintiff bears the burden of proving that these exclusion apply.  See Mistick, Inc. v. Northwestern Nat'l Cas. Co., 806 A.2d 39, 42 (Pa. Super. Ct. 2002).  Plaintiff insurer can sustain this burden only by establishing the applicability of the exclusion based on uncontradicted facts in the record.  See Miller v. Boston Ins. Co., 218 A.2d 275, 278 (Pa. 1966).  Policy exclusions are strictly construed against the insurer.  Selko v. Home Ins. Co., 139 F.3d 146, 152 n.3 (3d Cir. 1998).

---

[3] Defendant also contends that the allegations in Counts I (42 U.S.C. § 1983 violation of Cardwell's bodily integrity), VI (intentional infliction of emotional distress on Cardwell), and VII (assault and battery of Cardwell) fall within the definition of "law enforcement wrongful acts," thereby establishing coverage under the Policy.  (Def.'s Br. at 7-9).  The Court, however, need not address this question because it is clear, as explained below, that the "Sexual Abuse or Molestation" and "Violation of Statute" exclusions each independently bar potential coverage for these counts.  See i-Frontier, Inc. v. Gulf Underwriters Ins. Co., No. 04-5797, 2005 WL 1353614, at *3 (E.D. Pa. June 3, 2005) ("We need not delve into the interpretation of the term 'cyberspace activities' because it is clear that the policy exclusions bar insurance coverage.); see also Lower Paxton Twp. v. U.S. Fidelity and Guar. Co., 557 A.2d 393, 396 (Pa. Super. Ct. 1989) ("Since we are persuaded . . . that any damages arising from the event at the Fleming home, whether directly or indirectly, are excluded from coverage under the pollution exclusion, we need not address the remaining issues."), appeal denied, 567 A.2d 653 (Pa. 1989).

A.        **Sexual Abuse or Molestation Exclusion**

Plaintiff argues that the "Sexual Abuse or Molestation" exclusion in the Policy eliminates any duty on the part of Plaintiff to defend Defendant against Counts I (42 U.S.C. § 1983 violation of Cardwell's bodily integrity), VI (intentional infliction of emotional distress on Cardwell), and VII (assault and battery of Cardwell).  (Pl.'s Br. at 11).  The Court agrees.  This exclusion states that Plaintiff, with exceptions not applicable here, "will not be obligated to make any payment nor . . . defend any 'suit' in connection with any 'claim' made against the insured for any 'law enforcement wrongful act' arising out of allegations of actual or threatened 'sexual abuse or molestation' committed by, caused by, permitted by, or contributed to by any insured."  (Policy, Sec. II, NCC00045).  The Policy further states that "[c]overage is not afforded to the individual who is alleged to have directly committed such 'sexual abuse or molestation.'" (Id.).  "Sexual abuse or molestation" is broadly defined as "any action or behavior or any physical contact or touching which is intended to or which culminates *in any sexual act*."  (Id.) (emphasis added).

The Court's initial inquiry is whether the "Sexual Abuse or Molestation" exclusion is ambiguous and therefore should be construed in favor of Defendant insured.  Defendant contends that this exclusion is ambiguous and therefore must be construed in favor of the insured.  In particular, Defendant claims that the definition of "sexual abuse or molestation" is "so broad and far reaching that it has virtually no limit in sight" and is therefore ambiguous.  (Def.'s Br. at 11-12).  Defendant argues that "this definition could include any type of sexual contact, irrespective of whether it was lawful or consensual."  (Id. at 12).

Though broad, the "Sexual Abuse or Molestation" exclusion is unambiguous.  See Am. Commerce Ins. Co. v. Porto, 811 A.2d 1185, 1198-99 (R.I. 2002) ("[I]nsurance policy exclusions

for sexual abuse or molestation are not generally viewed as ambiguous."); <u>Community Action for</u>

<u>Greater Middlesex County, Inc. v. Am. Alliance Ins. Co.</u>, 757 A.2d 1074, 1083 (Conn. 2000);

<u>Westfield Ins. Co. v. Holland</u>, No. 07-5496, 2008 WL 5378267, at *7 (E.D. Pa. Dec. 19, 2008)

("Pennsylvania courts have not been opposed to enforcing molestation exclusions within

policies.").  Contrary to Defendant's position, a broad contractual provision does not mean that

the provision is ambiguous.  <u>See</u> <u>United States v. Yusuf</u>, 199 F. App'x 127, 131-32 (3d Cir.

2006) (holding that the contract at issue was not ambiguous because the terms were broad and

unqualified as opposed to vague or obscure words subject to a double meaning); <u>see also</u> <u>Steuart</u>

<u>v. McChesney</u>, 444 A.2d 659, 663 (Pa. 1982) ("[T]he meaning of language cannot be distorted to

establish the ambiguity.").  Moreover, the question of whether an exclusion is ambiguous cannot

be resolved in a vacuum.  <u>See</u> <u>Madison Constr. Co. v. Harleysville Mut. Ins. Co.</u>, 735 A.2d 100,

106 (Pa. 1999).  Rather, a contractual term is deemed ambiguous after a court concludes that the

term is subject to more than one reasonable interpretation *when applied to a particular set of*

*facts*.  <u>See</u> <u>id.</u>

  When applied to the facts alleged in the Amended Complaint—not to the hypothetical

scenarios presented by Defendant—the exclusion cannot be viewed as subject to more than one

reasonable interpretation.  Simply put, the Policy's failure to list various acts that constitute

"sexual abuse or molestation" or differentiate between consensual sexual activity and non-

consensual sexual activity does not, by itself, imply multiple meanings sufficient to create an

ambiguity here.  Defendant also cannot hide behind the fact that the exclusion does not define

"sexual act."  (Def.'s Sur-reply Br. at 2.)  As courts have routinely held, a policy's failure to

define a term does not itself create an ambiguity if that term's meaning is unambiguous when

read in context.  See, e.g., Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co., 432 F. Supp. 2d

488, 501-02 (E.D. Pa. 2006), aff'd, 503 F.3d 339 (3d Cir. 2007).  A "sexual act"—which is the

operative term in the definition of "sexual abuse or molestation"—clearly means, when read in

context, either intercourse or intimate touching that does not necessarily lead to sexual relations.

See also Black's Law Dictionary 1407 (8th ed. 2004) (defining "sexual relations" as a "[p]hysical

sexual activity that does not necessarily culminate in intercourse" and noting that sexual relations

usually involves intimate touching).

      Having determined that the "Sexual Abuse or Molestation" exclusion is unambiguous

here, the Court also concludes that this exclusion clearly bars coverage based on its plain

meaning.  The "Sexual Abuse or Molestation" exclusion appears to have been specifically

designed to address the widely held understanding that sexual abuse can be the product of

consensual acts, especially when a minor is involved.  Simply put, notwithstanding other conduct

that this broad definition of "sexual abuse or molestation" may include within its purview, the

exclusion certainly includes the sexual acts—i.e., the "coerced" oral sex and sexual intercourse

allegedly engaged in by Defendant with minor Cardwell—in the Amended Complaint.  (Am.

Compl. ¶ 14).  Other courts have enforced similarly broad abuse exclusions.  See, e.g., Evanston

Ins. Co. v. Johns, 530 F.3d 710, 714 (8th Cir. 2008); Neff v. Alterra Healthcare Corp., 271 F.

App'x 224, 225-27 (3d Cir. 2008).[4]

---

[4] Defendant further attacks the exclusion by arguing that the Amended Complaint in the Underlying Action "does not specifically allege that Young committed an act of sexual abuse or molestation."  (Def.'s Br. at 12). Rather, according to Defendant, "the Amended Complaint merely claims that Young had an illicit and illegal sexual relationship with the minor."  (Id.).  Contrary to Defendant's assertion, the Amended Complaint need not use the magic words of "sexual abuse" or "molestation" for coverage to be barred under this exclusion.  It is also worth noting that the Amended Complaint does mention the term "abuse," noting that "[e]ventually, Plaintiff, Karen Romano, discovered Defendant Young's *abuse* of the minor child."  (Am. Compl. ¶ 18) (emphasis added).

The Court also cannot accept Defendant's position that his plea of guilty to statutory sexual assault under 18 Pa. Cons. Stat. Ann. § 3122.1—which is pleaded in Romano's Amended Complaint—is not tantamount to an admission of sexual abuse.  (See Def.'s Br. at 13-14; Am. Compl. ¶ 17).  Section 3122.1, though not couched in terms of "sexual abuse," is designed to protect minors who may more easily fall victim to manipulation from becoming victims to the predatory sexual advances of older individuals.  See Commonwealth v. Albert, 758 A.2d 1149, 1154 (Pa. 2000) (explaining that this law "recognizes that older, more mature individuals are in a position that would allow them to take advantage of the immaturity and poor judgment of very young minors" and that this law "is specifically tailored to prevent older teens and adults from preying upon very young minor victims").  Because this type of sexual conduct is deemed abusive on its face, consent is not a defense to statutory sexual assault.  See Commonwealth v. Castelhun, 889 A.2d 1228, 1234 (Pa. Super. Ct. 2005).  This is precisely the type of conduct alleged in the Amended Complaint, which asserts that Defendant "preyed upon the minor's tender age and vulnerability, in order to commit sex crimes against her, when she was not legally capable of consenting."  (Am. Compl. ¶ 16); see also 23 Pa. Cons. Stat. Ann. § 6102(a)(1) (defining "abuse" under Pennsylvania's Protection from Abuse Act as, among other things, attempting to cause or intentionally, knowingly or recklessly causing statutory sexual assault).  As a result, the contention that Defendant did not admit that he engaged in sexual abuse when he pled guilty to statutory sexual assault is simply untenable.

In this case, Defendant is not only alleged to have directly committed sexual abuse, but he also admitted to such acts.  (Joint Stipulation of Facts ¶¶ 13-14).  Accordingly, based on the clear language of the "Sexual Abuse or Molestation" exclusion, Plaintiff has established that it has no

duty to defend Defendant in the Underlying Action against the following counts in the Amended

Complaint that arise out of alleged sexual abuse: (1) Count I (42 U.S.C. § 1983 violation of

Cardwell's bodily integrity); (2) Count VI (intentional infliction of emotional distress); and (3)

Count VII (assault and battery).

### B.    Violation of Statute Exclusion

Plaintiff further argues that the Policy's "Violation of Statute" exclusion eliminates any

duty on the part of Plaintiff to defend Defendant against Counts I (42 U.S.C. § 1983 violation of

Cardwell's bodily integrity), VI (intentional infliction of emotional distress on Cardwell), and VII

(assault and battery of Cardwell).  (Pl.'s Br. at 13).  This exclusion bars coverage for claims

made against the insured "[a]rising out of the *deliberate* violation of any federal, state, or local

statute, ordinance, rule or regulation committed by or with the knowledge and consent of the

insured."  (Policy, Sec. II.2, NCC00065) (emphasis added).  The Policy further states that the

"Violation of Statute" exclusion "applies to both civil and criminal charges filed against the

insured in his or her official or individual capacity if the charges result in an obligation to pay

damages, a plea of guilty, a verdict of guilty, a sentence or a plea of no contest."  (Id.).  Plaintiff

argues that this exclusion applies because (a) Defendant is alleged to have had sexual relations

with minor Cardwell and (b) Defendant pled guilty to statutory sexual assault.  See 18 Pa. Cons.

Stat. Ann. § 3122.1; (Pl.'s Br. at 12-13).  The Court agrees.

Defendant's argument for rendering this exclusion inapplicable focuses on the term

"deliberate" in the exclusion provision and reasons that, since this term is not defined in the

Policy, it is synonymous with the term "intentional."  (Def.'s Br. at 14); see Black's Law

Dictionary 459 (8th ed. 2004).  Defendant then examines a number of cases interpreting so-called

"intentional act exclusions" and argues that "the insured must have specifically intended to cause injury" for this exclusion to apply.  (Id.); see, e.g., Foremost Ins. Co. v. Weetman, 726 F. Supp. 618 (W.D. Pa. 1989), aff'd, 904 F.2d 697 (3d Cir. 1990); United Servs. Auto. Assoc. v. Elitzky, 517 A.2d 982, 985, 989 (Pa. Super. Ct. 1986), appeal denied, 528 A.2d 957 (Pa. 1987). Therefore, according to Defendant's position, this exclusion is inapplicable because "Plaintiff has failed to offer any evidence to prove that Young intended to cause the minor harm."  (Def.'s Br. at 15).

Defendant's argument improperly adds an injury component to the "Violation of Statute" exclusion that cannot be extracted from the Policy.  In Defendant's cited cases, the exclusion at issue specifically stated that coverage did not exist for personal liability and medical payments to others for *bodily injury or property damage* "[w]hich is expected or *intended* by the insured." See, e.g., Elitzky, 517 A.2d at 982 (emphasis added).  Consequently, an intent to cause injury was clearly required for the exclusion to preclude coverage.  However, in the case *sub judice*, the exclusion makes no mention of a deliberate intent to cause injury, but rather excludes coverage for a *deliberate* violation of a federal, state, or local law.  The Court will not insert an "injury" caveat into this exclusion, as the Court's duty is to construe the policy as it is written and not to rewrite it.  See Essex Ins. Co. v. RMJC, Inc., 306 F. App'x 749, 752-53 (3d Cir. 2009) (holding that assault exclusion did not require an intent to injure and noting that all the cases cited by the insured "involve insurance policy language excluding coverage only for harm that is specifically expected or intended by the insured").

Despite Defendant's attempts to impose an "intent to cause injury" requirement to the "Violation of Statute" exclusion, this exclusion applies based on a plain reading of the Policy.  If,

as Defendant argues, the term "deliberate" is synonymous with "intentional," then the Court must assess whether the Amended Complaint's alleged acts arise out of an "*intentional* violation" of the law.  Blacks Law Dictionary defines an "intentional act" as, among other things, one that is "foreseen and desired by the doer, and this foresight and desire resulted in the act through the operation of the will."  See Black's Law Dictionary 26 (8th ed. 2004).  To this extent, the clear and common sense meaning of the "Violation of Statute" exclusion is to preclude coverage for acts arising out of violations of the law that were foreseen and desired by the insured.  Thus, the emphasis of this exclusion is on the deliberate nature of a violation of the law and any resulting plea or verdict, and Plaintiff need not establish that Defendant had a subjective intent to harm Cardwell.[5]

Here, the Amended Complaint alleged that Defendant both had sexual relations with minor Cardwell and pled guilty to a charge of felony statutory sexual assault.  (Am. Compl. ¶ 17).  Moreover, at his deposition, Defendant admitted that he had sexual relations with Cardwell on three occasions in 2005, and that Cardwell was fifteen years old during their first sexual encounter.  (Joint Stipulation of Facts ¶¶ 13-14).  He further admitted that he was aware that he was committing a crime during his sexual encounters with Cardwell.  (Id. ¶ 15).  As a result, Plaintiff has satisfied its burden in showing that these facts place this case squarely within the parameters of the "Violation of Statute" exclusion.  Accordingly, based on the analysis above, Plaintiff has shown that it has no duty to defend Defendant against the following counts in the

---

[5] Because Plaintiff does not have to establish that Defendant intended to harm Cardwell for this "Violation of Statute" exclusion to apply—and notwithstanding the fact that the Court has already adjudicated the Underlying Action—the Court need not address Defendant's argument that a decision on this issue "could bind the trial court in the underlying action by collateral estoppel."  (Def.'s Br. at 16).

Amended Complaint which arise out of Defendant's illegal acts: (1) Count I (42 U.S.C. § 1983 violation of Cardwell's bodily integrity); (2) Count VI (intentional infliction of emotional distress); and (3) Count VII (assault and battery).  See Clarendon, 121 F. App'x at 942 (holding that a violation of statute exclusion applied because plaintiff in underlying action alleged that York and five of its officers "knowingly and intentionally" violated or conspired to violate the plaintiffs' constitutional rights).

## CONCLUSION

In conclusion, there is no potential coverage for Counts VIII (defamation of Romano) and IX (false light/invasion of privacy of Romano), as the alleged facts in these counts do not arise out of and were not committed during the course and scope of "law enforcement activities." Also, the "Sexual Abuse or Molestation" and "Violation of Statute" exclusions each independently preclude potential coverage for Counts I (42 U.S.C. § 1983 violation of Cardwell's bodily integrity), VI (intentional infliction of emotional distress on Cardwell), and VII (assault and battery of Cardwell) in the Amended Complaint.  Accordingly, Plaintiff has no duty to defend Defendant against all of the claims asserted against Defendant in the Underlying Action.[6]

An appropriate Order will be docketed.

---

[6] Because there is no potential coverage under the plain terms of the Policy, the Court need not address whether the public policy of Pennsylvania bars coverage.